(No. 12881.—Reversed and remanded.)

WALTER E. GREENFIELD, Appellant, *vs.* ANDREW RUSSEL,
Auditor of Public Accounts, *et al.* Appellees.

*Opinion filed April 21, 1920.*

1. EQUITY—*when allegations of bill must be taken as true.* On
the hearing of a petition to file a bill to restrain the disbursement
of public moneys by State officers, the allegations of the bill, which
accompanies the petition, must be taken as true when sworn to by
the petitioner.

2. CONSTITUTIONAL LAW—*legislature can exercise no judicial
functions not especially granted by constitution.* The legislature
cannot exercise any judicial functions except those that are es-
pecially granted by the constitution.

3. SAME—*what powers are possessed by the legislature.* The
legislature possesses every power not delegated to some other de-
partment of the State or to the Federal government or not denied
to it by the constitution of the State or of the United States.

4. SAME—*legislature cannot conduct a judicial investigation of
charges against an institution or individual.* While the legislature
has power to obtain information for the purpose of acting upon
any subject upon which it has power to legislate, it cannot conduct
a public and judicial investigation of any charges made against a
private institution or individual under the pretense of investigat-
ing for the purpose of legislation, and all such investigations by
the legislature, when judicial in character, are in violation of the
constitution.

5. SAME—*a judicial investigation should give all parties affected
a full hearing.* A judicial investigation should at all times proceed
in an orderly manner before a tribunal legally constituted to make
such investigation and in such a manner as to give to all parties
thereby affected a full hearing and an adjudication that will de-
termine their rights.

6. SAME—*tax-payer may resort to equity to restrain disburse-
ment of public funds under an invalid resolution.* Where a resolu-
tion of the legislature to conduct an investigation is invalid a tax-
payer may resort to a court of equity to prevent the misapplication
of public funds in the payment of the expenses of the investigation.

APPEAL from the Circuit Court of Sangamon county;
the Hon. FRANK W. BURTON, Judge, presiding.

FELSENTHAL, WILSON & STRUCKMANN, and THEODORE FORBY, for appellant.

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant presented a petition to the circuit court of Sangamon county, accompanied by a bill of complaint, to restrain appellees, as Auditor of Public Accounts and State Treasurer, respectively, from paying out funds of the State by reason of House Bill No. 602, and asked leave to file the bill. · The circuit court refused to allow the bill to be filed and this appeal followed.

The petition was filed in accordance with "An act in relation to suits to restrain and enjoin the disbursement of public moneys by officers of the State." (Laws of 1917, p. 534.) That act provides that a suit in equity to restrain and enjoin the disbursement of public moneys by the proper officer or officers of the State may be maintained either by the Attorney General or by any citizen and tax-payer of the State, and when begun by a citizen of the State shall be commenced by a petition for leave to file a bill in equity, etc. If upon a hearing the court or the judge thereof shall be satisfied that there is reasonable ground for the filing of such bill, such court or judge may grant the petition and order the bill to be filed and process issued, and if such petition is denied, an appeal may be prosecuted to this court.

The material allegations in the bill relied on by appellant are, that the petitioner is, and for several years has been, a citizen and resident and tax-payer of this State, and that the appellees, Andrew Russel and Fred E. Sterling, are, respectively, the Auditor of Public Accounts and Treasurer of the State of Illinois; that a certain joint resolution was introduced and passed by the house of representatives and

the senate of Illinois known as House Joint Resolution No. 7, and was afterwards superseded by another joint resolution known as House Joint Resolution No. 11, the latter being the same as the former with slight amendments, and that as amended the resolution is as follows:

*"House Joint Resolution No. 11.*

"Whereas, an institution calling itself 'The Christian Catholic Apostolic Church of Zion,' located at Zion City, in the State of Illinois, and one Wilbur Glenn Voliva, the owner or pretended owner of all or nearly all the real estate in said city, and by profession claims to be endowed with supernatural powers and is represented as claiming direct communication with divine power; and

"Whereas, it is represented that said institution and its said pretended owner and overseer, Wilbur Glenn Voliva, through such supernatural and divine powers is and has been enticing and encouraging citizens of this and other States to invest large sums of money in leases of land in said city and in other Zion enterprises, and by and through such leases pretending to extend over a period of a thousand years, it is charged that the same is a mere means and pretense to secure and inveigle the moneys and property of innocent persons under the guise of a false and fictitious religion, and that said institution through that and other means is using the city government of Zion City, the schools of said city and the courts of said city to carry out its illegal and fraudulent purposes in securing property and oppressing those citizens of the State of Illinois who do not conform to the pretended beliefs of said institution, and that in many other and divers ways, as it is represented, the said institution and its overseer, by controlling the rents, lots and homes, the business, the municipal school and judicial government of said city, is and has become a blot upon the State of Illinois and is and has been depriving citizens of said city of the rights of citizenship and of a free government, and is and has been misrepresenting and fraudulently stating to the public its financial status and its religious beliefs, and is being run for the purpose of defrauding the public; and

"Whereas, *there are other persons, institutions and pretended organizations soliciting funds, deceiving the people and preying upon the public of the like and similar nature;* therefore be it

"*Resolved by the house of representatives, the senate concurring therein,* that a committee of nine be appointed, five from the house and four from the senate, to investigate the said institution *and said other persons, institutions and pretended organizations;* and be it further

"*Resolved,* that said committee is hereby fully authorized to take evidence and have the power to summon before it, or such

sub-committee as said committee may appoint, witnesses and documents as said committee may find necessary to do to fully and completely investigate and examine into all of the affairs of said institution and said overseer *and said other persons, institutions and pretended organizations,* and to report the same, with the recommendations of said committee, to both houses of the General Assembly; and be it further

"*Resolved,* that said committee have full power, with the assent of the speaker of the house, to employ a sergeant-at-arms and a secretary and such stenographers as may be necessary to fully and completely carry out said investigation."

It is further alleged that the words, "There are other persons, institutions and pretended organizations soliciting funds," etc., which are found in the third paragraph of the resolution above set forth, all in italics, were added to the original resolution as a mere subterfuge and in an attempt to create a legal and lawful subject of inquiry of said committee, and that it was never intended that the committee should investigate any other persons than those named in the original resolution. It is also alleged that House Bill No. 602 was regularly passed by both branches of the legislature and signed by the Governor, providing, in substance, that there is appropriated by the General Assembly the sum of $5000 for the necessary expenses of a joint committee created by resolution No. 11, and providing that the Auditor of Public Accounts is authorized to draw his warrants on that appropriation, upon presentation of vouchers certified to as correct by the chairman of the committee and approved by the speaker of the house of representatives and the president of the senate, and that the State is authorized and directed to pay them, and that it became a law at once by an emergency clause; that pursuant to said resolution a committee of ten members, five from each house, was selected, and that they met at Chicago and proceeded to hear evidence in accordance with the resolution, after selecting a chairman; that it is their purpose to hold other meetings and incur further expenses in carrying out said resolution and to present vouchers for all such expenses; that the Aud-

itor intends to and will issue vouchers for said expenses, and that the Treasurer threatens and intends to pay the same unless prevented by order of court. The prayer of the bill is that appellees be restrained and enjoined from drawing or paying any warrants for such expenses.

Two grounds are urged by appellant for a reversal of the decree of the court: (1) That the General Assembly was without authority or power to pass said resolution or to incur any expenses whatever thereunder, as charged in the bill; (2) that the members of the committee, being members of the legislature, are not legally entitled to be paid their personal expenses for such services.

When properly analyzed the foregoing resolution is in three parts. The first part,—the first paragraph of the resolution,—sets forth the subject or the persons that are to be particularly and specially considered or treated. These persons are set forth in that paragraph as the Christian Catholic Apostolic Church of Zion, located at Zion City, in this State, and one Wilbur Glenn Voliva, who is referred to as the owner or pretended owner of all or nearly all of the real estate in that city, and one who by profession claims to be endowed with supernatural powers and claims direct communication with divine power. The second part of the resolution consists of various charges of offenses or misdoings by said church and Wilbur Glenn Voliva, the latter being styled overseer and pretended owner of said church. These charges profess to be on information and are made much after the fashion and style of an indictment found by a grand jury. The charges are, in substance, that said church and its overseer have been securing and inveigling the moneys and properties of innocent persons under the guise of a false and fictitious religion and through a claim of supernatural and divine power, and by falsely pretending that the leases of land in said city in which such innocents are induced to invest extend over a period of a thousand years; that said church and its overseer are using the city

government of Zion City, the schools of said city and the
courts of said city to carry out their illegal and fraudulent
purposes and for oppressing those citizens who do not con-
form to the pretended beliefs of said church, and that in
many other and divers ways said church and its overseer,
by controlling the rents, lots and homes, the business, the
municipal schools and judicial government of the city, are
and have been depriving citizens of said city of the rights
of citizenship and of free government, and are and have
been misrepresenting and fraudulently stating to the public
the financial status of said church and its religious beliefs,
and that it is being run for the purpose of defrauding the
public.  The third part of the resolution immediately fol-
lows the second and consists of the resolutions of the Gen--
eral Assembly to appoint a committee from its body and
to empower it to summon witnesses and documents neces-
sary to fully and completely investigate and examine into
all of the affairs of said institution and of said overseer,
and of all other persons and institutions soliciting funds, de-
ceiving the people and preying upon the public, of the like
and similar nature as said church and its overseer, and to
report the same, with recommendations of the committee,
to both houses of the General Assembly.

We are convinced from a consideration of this resolu-
tion that it was not passed by the General Assembly with
a view to have this committee investigate said charges and
for the purpose of future legislation if the same should
be deemed advisable.  This resolution does not anywhere
in it contain language that expresses such a purpose or in-
tention.  The purposes sought to be accomplished by the
investigation are not disclosed by the resolution.  It is the
past conduct of a private party and a private institution that
is to be investigated, and the committee is to investigate
all the affairs of said institution and of said party.  It ap-
pears that the private party to be investigated is not a pub-
lic officer of any character in this State and that the insti-

tution to be investigated is not a municipality or corporation organized under the State law. The church is not chartered under the State, as it appears in this case. The bill in this case is sworn to and its allegations must be taken to be true. It is expressly averred in the bill that it was at no time the intention of the legislature to investigate anyone except said institution and its overseer, and that the amendment of the resolution, as already indicated, was for the mere purpose of making the resolution appear to be legal and general in its application and not specially directed to the conduct of said individuals. A careful examination of the original resolution and the amended resolution also indicates that this averment in the bill is true, as the resolution as amended is still directed, in its first clause, to only the private individual and institution aforesaid. To state the matter briefly, the legislature has made charges of past misconduct of said church and of its overseer and a committee is appointed and empowered to investigate that conduct and to report concerning the same, with recommendations, and this resolution has evidently been inspired by the complaint of some unknown party, as it is made upon information. A careful consideration of the charges made must also necessarily lead to the conclusion that no legislation was contemplated by the legislature, as the aggrieved parties already had remedies provided for them under the law as it then existed, and that the legislature had no power or right to invoke or set in motion any public or private law for the purpose of securing to the parties any remedy or relief from the wrongs alleged to have been inflicted, as the exercise of such a power and right is necessarily the exercise of judicial functions.

Article 3 of our present constitution provides as follows: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any

power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

The exceptions "directed or permitted" by the foregoing article are the following:

Article 4, section 9: "Each house shall determine the rules of its proceedings, and be the judge of the election, returns and qualifications of its members; shall choose its own officers; and the senate shall choose a temporary president to preside when the Lieutenant Governor shall not attend as president or shall act as Governor. * * * No member shall be expelled by either house except by a vote of two-thirds of all the members elected to that house, and no member shall be twice expelled for the same offense. Each house may punish, by imprisonment, any person not a member, who shall be guilty of disrespect to the house by disorderly or contemptuous behavior in its presence."

Article 6, section 30: "The General Assembly may, for cause entered on the journal, upon due notice and opportunity of defense, remove from office any judge, upon concurrence of three-fourths of all the members elected, of each house."

The foregoing provisions are the only ones in the constitution that expressly define the powers of government that are vested in the General Assembly, and it cannot transcend the powers thus given in the exercise of its functions of government. Our General Assembly may exercise all the legislative power which the parliament of Great Britain possesses, except as restricted by the constitution. It cannot, however, exercise any judicial functions except those that are specially permitted or granted by the constitution, as that power is specially vested in the judiciary of this State. (*In re Day,* 181 Ill. 73.) To state it in another way: Our legislature possesses every power not delegated to some other department of the State or to the Federal government or not denied to it by the constitution of the State or of the United States. (*Winch* v. *Tobin,* 107 Ill. 212; *People* v.

*Thompson,* 155 id. 451.)   It must also be conceded that a
State legislature has power to obtain information upon any
subject upon which it has power to legislate, with a view
to its enlightenment and guidance.   This is essential to the
performance of its legislative functions, and it has long
been exercised without question.   (*Ex parte Parker,* (S. C.)
7 Ann. Cas. 874, and note.)   While this is true, it cannot
violate the constitutional rights of any institution or of any
individual by conducting a public and judicial investigation
of any charges made against such person or institution un-
der the pretense or cloak of its power to investigate for the
purpose of legislation.   This is true no matter whether the
investigation be for the purpose of instituting prosecutions,
for the aid and benefit of a grand jury in finding indict-
ments, or for the purpose of intentionally injuring or vindi-
cating any institution or individual.   All such investigations,
when judicial in character, made by the General Assembly
are absolutely without authority and in violation of the con-
stitutional rights of the parties whose conduct is so publicly
investigated.  *Kilbourn* v. *Thompson,* 103 U. S. 168; *State*
v. *Guilbert,* 75 Ohio St. 1.

There can be no question but that the investigation in
question is judicial in character.   "The distinction between
the functions of the legislative and the judicial departments
is, that it is the province of the legislature to establish rules
that shall regulate and govern in matters or transactions
occurring subsequent to the legislative action, while the ju-
diciary determines rights and obligations with reference to
transactions that are past or conditions that exist at the
time of the exercise of judicial power."   (12 Corpus Juris,
807; *Newland* v. *Marsh,* 19 Ill. 376.)   The declared pur-
pose of the resolution was to investigate charges that had
been made against this institution and its overseer, and it
was an investigation of all past conduct with reference to
the matters heretofore stated.   The investigation was not

of a character that the legislature could undertake under the provisions of the constitution. All criminal charges, if any there were, against these parties, and all invasions by them of the private rights of others, could only be investigated legally by a grand jury or a court legally constituted for the purpose. If the rights of private individuals and private institutions could be invaded by the legislature in that manner, their reputation and their character and their business would be greatly endangered if not entirely destroyed, and they would not have or enjoy in such public investigations their constitutional right of answering and making a defense to such charges, however false they might be. This whole investigation may have been started with the very best of motives on the part of the members of the legislature, and it may have been carried out by the committee, so far as it did conduct the investigation, with the utmost fairness possible. Nevertheless, the act of the General Assembly in question was not only an invasion of the private rights of the individual and institution investigated but it was also an invasion of the province of the judiciary. Under such circumstances it is the duty of the courts to protect the rights of individuals by refusing to permit the legislature to thus invade the jurisdiction of the court. A judicial investigation should at all times proceed in an orderly manner before a tribunal legally constituted to make such investigation and in such a manner as to give all parties thereby affected a complete and full hearing and an adjudication that will determine and settle the rights of the parties. An investigation by the legislature that can in no way be serviceable to it in future legislation and that must necessarily endanger the constitutional rights of private individuals ought never to be made, and such an investigation is prohibited by the constitution of Illinois.

We have considered the authorities submitted by appellees and find that they are inapplicable to the facts in this

292 — 26

case and discussion of them need not be made. There are a number of cases that recognize that a legislature has a right to investigate the conduct of corporations chartered by it and the conduct of public officers. In this case such conduct is not in question, as the parties investigated are private parties as distinguished from corporations and public officers.

As the investigation in question was wholly unwarranted and illegal, appellant, as a tax-payer, has a right to resort to a court of equity to prevent the misapplication of public funds in the payment of the expenses of such an investigation. (*Fergus* v. *Russel*, 270. Ill. 304.) As the entire act of legislation is void, all expenses made in such investigation are illegal and their payment should be restrained under the allegations of this bill.

There is no charge or intimation in the bill of complaint that any member of the committee has made or intends to make any charge or claim for his personal expenses, to be paid out of such appropriation. The bill appropriating the money only appropriates money for necessary expenses of the committee, and we are not to understand by that that anything but the necessary and legitimate expenses will be charged for and paid. However, this is immaterial, as under our holding the whole expenses of this investigation were unwarranted.

The court erred in refusing to allow the bill to be filed. The decree is therefore reversed and the cause remanded, with dirctions to allow the bill to be filed and to permit an amendment as to the second feature of the bill if appellant shall see fit to so amend.

*Reversed and remanded, with directions.*