(No. 26150.—

ORLIE WM. FLETCHER *et al.* Appellants, *vs.* THE CITY OF PARIS *et al.* Appellees.

*Opinion filed June 17, 1941.*

Van Sellar & Van Sellar, Robert F. Cotton, Harold E. Nimz, and C. H. Swick, for appellants.

Vail, Mills & Armstrong, and Hartman Schwartz, for appellees.

Mr. Justice Smith delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Edgar county dismissing the complaint filed by appellants against appellees. The three appellants are described in the complaint as citizens, legal voters, residents, property owners and taxpayers in the city of Paris, Edgar county, Illinois. The defendants named in the complaint are the city of Paris, the individual commissioners of the city, constituting its common council, and other officers of said city.

The acts complained of are set out in much detail in the complaint. In so far as the facts pleaded are necessary to the proper consideration and decision of this case they may be summarized as follows: On November 28, 1939, by resolution of its council, the city of Paris purported to enter into a contract with Lansford and Company, by which the city approved the selection by said company of engineers to furnish the necessary engineering services for

the construction of a proposed municipally owned light and power plant. The amount to be paid to the engineers for engineering services was not to exceed the sum of $40,000. The purported contract further recited that the city of Paris had agreed to issue and sell, and Lansford and Company had agreed to buy, $600,000 par value of public utility certificates proposed to be thereafter issued by the city at a price and upon the terms stated in the purported contract. It is unnecessary to further consider the provisions of that purported contract for the.reason that appellees concede that it was wholly void. Such concession accords with our view of the law.

The complaint further alleged that on October 19, 1940, the city council passed ordinance No. 6, which ordinance provided for the construction of a municipally owned light and power plant for said city. It was alleged that said ordinance No. 6 was not legally passed and was void and ineffective for various reasons set forth in the complaint. It was further alleged that the city council adopted and passed ordinance No. 7, which ordinance purported to call an election for the purpose of submitting said ordinance No. 6 to a referendum vote, as provided in the Municipal Ownership act. (Ill. Rev. Stat. 1939, chap. 111⅔, par. 98.) It was alleged that ordinance No. 7 was not legally passed and was void for all the reasons alleged in connection with ordinance No. 6, and for various other reasons averred in the complaint. The prayer of the complaint was that appellees be enjoined from holding said election, or paying out any funds of the city for the expenses thereof, or in connection therewith, or incurring any obligations in connection with the holding of such election.

By ordinance No. 7 the election was called and was to be held on October 15, 1940. This suit was filed on September 17, 1940. A motion was filed by appellees to dismiss the complaint. The motion was heard, and on October 14, 1940, the day prior to the day on which the election

was to be held, the court entered an order sustaining the motion and dismissing the complaint for want of equity. The trial judge has certified that the case involves the validity of a municipal ordinance and the appeal was taken to this court direct. It was stated, on oral argument, that the election was held on October 15, 1940, as provided in said ordinance No. 7.

This being a suit primarily to enjoin the holding of a municipal election, and the election having already been held, the case might well be disposed of on the ground that the questions have become moot, were it not for the fact that the case also involves the right of appellants to enjoin the city and city officials from the use of public funds to defray the expenses of the election. The sole question remaining in the case is the right of appellants, as taxpayers, to enjoin the use of public funds to defray the expenses of holding an election called to vote upon the approval of ordinance No. 6, which is alleged to be invalid.

At the threshhold of this inquiry we are met with the question of jurisdiction. That the courts have no jurisdiction to enjoin the holding of an election has been long settled in this State. As far back as 1868, in the case of *People* v. *City of Galesburg,* 48 Ill. 485, the rule was definitely announced. In that case the court was asked to enjoin the holding of an election under an act of the legislature alleged to be unconstitutional and inoperative. The circuit court sustained a demurrer to the complaint and dismissed the suit for want of equity. On appeal to this court the decree was affirmed. In disposing of the case this court said in the opinion: "We are aware of no well considered case which has enjoined the holding of an election, or prevented an officer of the law from giving the required notices for, or the certificate of election. To sanction the practice of granting temporary injunctions in such cases, would be highly calculated to obstruct the various branches of government in the administration of public affairs.

Courts of equity can have no such power, otherwise any and all elections might be prevented, and government greatly embarrassed."

In the more recent case of *Payne* v. *Emmerson,* 290 Ill. 490, which was a suit to enjoin the submission of a public policy question to a referendum vote, after citing *Spies* v. *Byers,* 287 Ill. 627, *People* v. *McWeeney,* 259 id. 161, and *People* v. *Barrett,* 203 id. 99, the rule was stated as follows: "Accordingly it has been held in a great number of cases in this State that an injunction will not issue out of a court of equity for the purpose of restraining the holding of an election or in any manner directing or controlling the mode in which the same shall be conducted. The reason is that an election is a political matter with which courts of equity have nothing to do, and that such an attempt to check the free expression of opinion, to forbid the peaceable assemblage of the people, to obstruct the freedom of elections, if successful, would result in the overthrow of all liberties regulated by law. [Citing numerous cases.] The rule is the same whether it is contended that the election is without authority of law or otherwise. Pomeroy, in his latest edition of Equity Jurisprudence (secs. 1753-1755) lays down the same rule, and further says that the rule goes to the extent that an injunction will not be issued to forbid any of the steps in the proceedings looking to or pertaining to an election. He also lays it down as the law that the mere fact that the cost of the election will have to be borne by the State, and indirectly by the taxpayers, is no ground for an injunction at the relation of a taxpayer, because the injury is too trifling. In the case in hand appellee was the only party defendant, and the only way to have prevented the alleged illegal expense would have been for the court to have enjoined him from certifying said question, as prayed for in the bill, and there can be no question that the court had no jurisdiction to grant that relief."

The citation of other authorities on this point would constitute useless repetition. We have found no case, and counsel have cited none, departing from this rule. But counsel for appellants insist that this case is different because here they seek to enjoin the use of public funds and it is claimed that, for this reason, the taxpayer is interested and may be directly injured if the threatened payment of the expenses of the election be not enjoined. They say this is not a suit solely to enjoin the holding of an election, but that it can be sustained because a taxpayer has the right to prevent public officers from paying out funds raised by taxation for expenses, or purposes, not authorized by law. They rely on *McAlpine* v. *Dimick,* 326 Ill. 240, and *Moran* v. *Bowley,* 347 id. 148.

The case of *McAlpine* v. *Dimick, supra,* was a suit by a taxpayer to enjoin the county clerk from drawing any warrant on the county treasurer for the payment of judges and clerks serving at primary election, or for other expenses incurred in connection with such primary election, and to enjoin the county board of supervisors from auditing or allowing, and the county treasurer from paying, any such claims. There was no attempt to enjoin the holding of an election in that case. It was a suit primarily and solely to prevent the use of public funds to pay the expenses of a primary election under an invalid Primary law.

The case of *Moran* v. *Bowley supra,* was a suit against the county clerk and Secretary of State to enjoin the expenditure of public funds in carrying out the provisions of the Congressional Apportionment act of 1931, which act was alleged to be unconstitutional. The holding of an election was only incidentally involved and was not sought to be enjoined.

In this case it is obvious that the primary purpose of the suit was to have the court declare ordinance No. 6 invalid before it became effective or in force. The record

shows that that was the ultimate object of the suit, but such action was sought at the suit of citizens and taxpayers who had no right otherwise to question the validity of the ordinance upon the grounds urged. In order to enable an individual to invoke the power of the courts to enjoin the enforcement of an unconstitutional statute he must be able to show that the statute is invalid and that he has sustained, or is in immediate danger of sustaining, some direct injury as the result of its enforcement and not merely that he suffers in some indefinite way in common with people generally. (*Massachusetts* v. *Mellon*, 262 U. S. 447.) Moreover, this case is clearly distinguishable from the cases relied upon by appellants for the further reason that the election here sought to be enjoined is not an ordinary election. It is one which constitutes one of the steps necessary in the passage of the ordinance. Under the Municipal Ownership act, ordinance No. 6 could not become effective until said ordinance has been submitted to, and approved by, the voters of the city of Paris. (Ill. Rev. Stat. 1939, chap. 111⅔, par. 98.) The purpose of the election called by ordinance No. 7 was to comply with this provision of the statute. Until ordinance No. 6 should be so approved it could never become operative or effective. In order to bring into operation and effect an ordinance of the character of ordinance No. 6 it was necessary that certain steps be taken. First, such ordinance must be duly adopted and passed by the city council; second, it must be published in the manner provided by statute; third, it must be submitted to the voters of the municipality for approval, at an election called and held for such purpose; and, finally, it must be approved by the affirmative vote of a majority of such voters voting at such election on the proposition.

These are the fundamental requirements for the enactment of such an ordinance. No one, or any number of

these fundamental requirements less than all, is sufficient. They must all concur before the ordinance becomes such, or has any validity. Until these requirements have been complied with, no action can be taken under such an ordinance. That the courts cannot interfere with the exercise of these legislative functions is too well settled to now be questioned. The courts have no more right to interfere with or prevent the holding of an election which is one step in the legislative process for the enactment or bringing into existence a city ordinance, than they would have to enjoin the city council from adopting the ordinance in the first instance.

By the constitution, the powers of government are divided between three distinct branches of the government created by that instrument. The judiciary has no supervision over the legislative branch of the government. The courts can neither dictate nor enjoin the passage of legislation.

This court, in the early case of *Walton* v. *Develing,* 61 Ill. 201, speaking through Mr. Justice Thornton, made the following observations with reference to the rule just stated: "The election proposed would have been an assemblage of the people for a lawful purpose, and for consultation for the common good. It would have violated no law; would have been no usurpation of authority, and would have been the exercise of a constitutional right. * * * But the attempt to check the free expression of opinion—to forbid the peaceable assemblage of the people—to obstruct the freedom of elections—if successful, would result in the overthrow of all liberty regulated· by law. The mere effort to assume such power is dangerous to the rights of the citizen. If the courts can dictate to the officers of the people that they shall not hold an election from fear of some imaginery wrong, then people and officers are entirely subservient to the courts, and the con-

sequences are too fearful to contemplate. The principle which would authorize the mighty mandate of a court of chancery, in this case, would justify it in every election to be held by the people, and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge."

In *Stevens* v. *St. Mary's Training School,* 144 Ill. 336, it was said that the weight of authority and the tendency of the more recent decisions are in favor of the position that the restraining power of the courts should be directed against the enforcement rather than the passage of unauthorized orders and resolutions, or ordinances, by municipal corporations. Numerous authorities were there cited in support of the rule as there stated. It was further said, quoting from the opinion of Mr. Justice Field, in the case of *Alpers* v. *San Francisco,* 12 Sawy. 631: "If, by either body, the legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the State, or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative action threatened may be in disregard of constitutional restraints and impair the obligation of a contract, * * * does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary. * * * The principle, that the exercise of legislative power by a municipal body is beyond judicial control is too important in our institutions to be weakened by occasional decisions in disregard of it."

In *Roby* v. *City of Chicago,* 215 Ill. 604, this court, quoting from *Stevens* v. *St. Mary's Training School, supra,* said: "The weight of authority and the tendency of the

more recent decisions are in favor of the position that the restraining power of the courts should be directed against the enforcement rather than the passage of unauthorized orders and resolutions, or ordinances, by municipal corporations." The same rule was announced and reaffirmed in *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213.

In the case of *Ryan* v. *City of Chicago,* 369 Ill. 59, the court, referring to the case of *Payne* v. *Emmerson, supra,* said: "The gist of the supposed basis for equitable jurisdiction * * * was the expense of preparing and submitting the ballots on the public policy question. This expense was, in that case, held to be too trifling to amount .to an injury to a taxpayer."

Equity will not interfere by injunction at the suit of taxpayers to prevent trifling expenditures arising out of elections for the reason that the injury occasioned thereby is too trifling to invoke the jurisdiction of a court of equity. *Payne* v. *Emmerson, supra.*

This review of the authorities demonstrates that appellants' suit cannot be sustained on the ground that it is a suit to prevent the use of public funds for an unlawful purpose, because the items of expense to be incurred will necessarily be so trifling as to defy computation. Any further reference to the authorities cited would in nowise alter the rule. It is equally well settled that the courts will not enjoin the holding of an election. The holding of an election is the exercise of a political right. Equity will not interfere in a case affecting only the enjoyment of political rights. The reasons for the application of this rule are even more persuasive in a case like this where the election sought to be enjoined is a necessary step in the legislative process of adopting and bringing into existence a municipal ordinance.

As already observed, the obvious and predominate purpose of this suit was to have ordinance No. 6, at the suit of the taxpayers, declared invalid prior to the time it had

passed through all the legislative processes necessary to give it life. The validity of an ordinance cannot be thus prematurely and circuitously attacked in the courts. The courts have no such control over legislation by municipalities in this State.

The decree of the circuit court was right, and it is affirmed.

*Decree affirmed.*