NO. 4-22-0470

FILED
August 26, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SARAH SACHEN, IFEOMA NKEMDI, JOSEPH OCOL, and ALBERTO MOLINA, | ) ) | Appeal from the Circuit Court of |
|     Petitioners-Appellants, | ) | Sangamon County |
|     v. | ) | No. 22CH34 |
| THE ILLINOIS STATE BOARD OF ELECTIONS; | ) | |
| IAN LINNABARY, in His Official Capacity as Chair | ) | |
| of the Illinois State Board of Elections; CASANDRA | ) | |
| B. WATSON, WILLIAM J. CADIGAN, LAURA K. | ) | |
| DONAHUE, TONYA L. GENOVESE, CATHERINE | ) | |
| S. McCRORY, WILLIAM M. McGUFFAGE, RICK | ) | |
| S. TERVEN SR., in Their Official Capacities as | ) | |
| Members of the Illinois State Board of Elections; | ) | |
| JESSE WHITE, in His Official Capacity as Illinois | ) | |
| Secretary of State; and SUSANA MENDOZA, in Her | ) | Honorable |
| Official Capacity as Illinois State Comptroller, | ) | Raylene Grischow, |
|     Respondents-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Turner and Doherty concurred in the judgment and opinion.

**OPINION**

¶ 1   Petitioners—Illinois taxpayers Sarah Sachen, Ifeoma Nkemdi, Joseph Ocol, and Alberto Molina—filed a petition for leave to file a taxpayer action under section 11-303 of the Code of Civil Procedure (Code) (735 ILCS 5/11-303 (West 2020)). They sought to prevent respondents—the Illinois State Board of Elections (Board) and its members, Illinois Secretary of State Jesse White, and Illinois State Comptroller Susana Mendoza—from using public funds to place a proposed amendment to the Illinois Constitution on the November 2022 general election

ballot. Petitioners argued that the proposed amendment was preempted by federal law and violated the supremacy clause of the United States Constitution (U.S. Const., art. VI). Following a hearing, the trial court found no reasonable grounds existed for the filing of petitioners' action and denied their petition. Petitioners appeal. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3          Article XIV of the Illinois Constitution of 1970 provides three methods for amending our state constitution. Ill. Const. 1970, art. XIV. Specifically, amendments may be made (1) during a constitutional convention, (2) after being initiated by the Illinois General Assembly, and (3) through a "constitutional initiative" that is petitioned for by a certain percentage of voters. *Id.* §§ 1-3. Amendments proposed by the General Assembly must be approved by a "vote of three-fifths of the members elected to each house" and then submitted to voters at the next general election "occurring at least six months after such legislative approval." *Id.* § 2. Amendments proposed by way of a constitutional initiative must be "limited to structural and procedural subjects" that pertain to Illinois's legislative branch and also submitted for voter approval during a general election. *Id.* § 3.

¶ 4          In May 2021, the General Assembly passed a joint resolution that proposed amending the Illinois Constitution by adding the following language to Article I:

"SECTION 25. WORKERS' RIGHTS

(a) Employees shall have the fundamental right to organize and to bargain collectively through representatives of their own choosing for the purpose of negotiating wages, hours, and working conditions, and to protect their economic welfare and safety at work. No law shall be passed that interferes with, negates, or diminishes the right of employees to organize and bargain collectively over their

- 2 -

wages, hours, and other terms and conditions of employment and work place [*sic*] safety, including any law or ordinance that prohibits the execution or application of agreements between employers and labor organizations that represent employees requiring membership in an organization as a condition of employment.

(b) The provisions of this Section are controlling over those of Section 6 of Article VII." 102d Ill. Gen. Assem., Senate Joint Resolution Constitutional Amendment No. 11, May 26, 2021.

Legislative sponsors of the proposed amendment, which the parties refer to as "Amendment 1," described it as creating "a constitutional floor for [collective] bargaining in Illinois" (102d Ill. Gen. Assem., Senate Proceedings, May 21, 2021, at 32 (statements of Senator Villivalam)) and asserted that it would "[p]rohibit[ ] the passage of any future right-to-work law" (102d Ill. Gen. Assem., House Proceedings, May 26, 2021, at 18 (statements of Representative Evans)). Amendment 1 is scheduled to be submitted to Illinois voters on the November 2022 general election ballot.

¶ 5        In April 2022, petitioners initiated the underlying action against respondents, seeking leave to file a taxpayer action to restrain and enjoin the disbursement of state funds pursuant to section 11-303 of the Code (735 ILCS 5/11-303 (West 2020)). Petitioners asserted that the National Labor Relations Act (NLRA) (29 U.S.C. §§ 151 to 169 (2018)) governs private-sector collective bargaining nationwide and, because Amendment 1 would regulate the same activity— by establishing a state-law right to collective bargaining for private-sector employees—it was subject to preemption by the NLRA and in violation of the supremacy clause. Petitioners further alleged that, as Illinois taxpayers, they suffered injury "when the state uses its general revenue funds for an unconstitutional purpose" and, therefore, they had standing to bring a claim under section 11-303. They maintained injunctive relief was appropriate, stating that "[w]here a proposed

constitutional amendment scheduled to go before voters is itself unconstitutional, the proper remedy is an injunction to prevent state officials from placing it on the ballot."

¶ 6　　　　　Petitioners asked the trial court to find that there was a reasonable ground for the filing of their complaint and to order it filed. They attached a copy of their complaint to their petition, alleging Amendment 1 was preempted by the NLRA and in violation of the supremacy clause and seeking both declaratory relief and injunctive relief. Specifically, petitioners asked the court to (1) declare that Amendment 1 was preempted by the NLRA and in violation of the supremacy clause and (2) preliminarily and permanently enjoin respondents from disbursing or using public funds to place Amendment 1 on the November 2022 general election ballot.

¶ 7　　　　　In May 2022, respondents White and Mendoza filed an objection to petitioners' proposed action, arguing no reasonable grounds existed for the filing of their complaint because their claims failed as a matter of law. Although the Board and its members were also named as respondents, they did not enter an appearance in the underlying proceedings.

¶ 8　　　　　Following a hearing the same month, the trial court entered a written order denying petitioners leave to file their complaint and agreeing with respondents that reasonable grounds did not exist for the filing of their proposed action. First, the court found that the requirements for the General Assembly's approval of proposed amendments—as set forth in article XIV, section 2, of the constitution (Ill. Const. 1970, art. XIV, § 2)—had been met and, as a result, the proposed amendment was constitutionally required to be submitted to voters for approval or rejection. Second, the court concluded it had "no power to restrain a referendum on grounds that, if the proposed law were enacted, its enforcement would be unconstitutional." It relied on supreme court authority to that effect and distinguished cases cited by petitioners on the basis that they dealt with alleged constitutional challenges to "the proposed *manner of amendment*" rather than challenges

to the enforcement or substantive validity of the amendment in the event the of a successful referendum. (Emphasis in original.) The court stated that, in the present case, the referendum was "plainly proper because the requirements for holding the referendum under [article] XIV, section 2[,] [were] met" and that challenges to the anticipated enforcement of Amendment 1 following a successful election were premature.

¶ 9        Third, the trial court found that although petitioners maintained the NLRA would preempt Amendment 1 with respect to private-sector employees, they conceded that it would have valid application to public-sector employees, who are not governed by the NLRA. The court determined Amendment 1 would also prohibit the passage of laws restricting union security agreements, a subject about which states are free to legislate. The court found that in preemption cases, state law is displaced only to the extent that it actually conflicts with federal law. Further, it concluded as follows: "At most, federal preemption would merely render [Amendment 1] dormant, not invalid, because it would still apply to situations not covered by the NLRA and would become enforceable even as to preempted applications in the event the NLRA were ever repealed." Accordingly, the court determined no grounds existed for denying voters the opportunity to decide whether to add Amendment 1 to the Illinois Constitution.

¶ 10        This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, petitioners challenge the trial court's denial of their petition for leave to file a taxpayer action. They argue that as taxpayers, they have standing to seek to enjoin the use of public funds for any unconstitutional purpose, including the placement of a proposed constitutional amendment on the ballot when the amendment itself is unconstitutional. Further, they contend that, even if they are not entitled to injunctive relief, they still have standing to obtain declaratory relief

with respect to the constitutionality of the proposed amendment. Finally, petitioners maintain the court erred in finding their constitutional claim—that Amendment 1 violates the supremacy clause because it is preempted by the NLRA—lacked merit.

¶ 13                                    A. Standard of Review

¶ 14            Under the Code, either the attorney general or "any citizen and taxpayer" of Illinois may bring "[a]n action to restrain and enjoin the disbursement of public funds by any officer or officers of the State government." 735 ILCS 5/11-301 (West 2020). When such an action is brought by a private citizen, he or she must first petition the court for leave to file the action. *Id.* § 11-303. Following a hearing, the trial court may grant leave if it "is satisfied that there is reasonable ground for the filing of such action." *Id.* When determining whether reasonable grounds exist, a court must take as true all well-pled factual allegations in the complaint. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 16, 183 N.E.3d 94. A court may find reasonable grounds to be lacking if the purpose of the proposed action is "frivolous or malicious" (*Strat-O-Seal Manufacturing Co. v. Scott*, 27 Ill. 2d 563, 566, 190 N.E.2d 312, 313 (1963)) or where the petitioner's claims fail as a matter of law (*Tillman*, 2021 IL 126387, ¶ 22).

¶ 15            "The circuit court's decision whether to permit the filing of a taxpayer action under section 11-303 is reviewed for an abuse of discretion." *Id.* ¶ 15. However, this case also presents questions of law, including the proper scope of an action brought pursuant to section 11-303 and the legal sufficiency of petitioners' claims, which are subject to a *de novo* standard of review. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21, 63 N.E.3d 824 (stating a *de novo* standard applies to questions of law). As respondents point out, a trial court abuses its discretion if it bases its "decision on an incorrect view of the law." *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 46, 76 N.E.3d 770.

¶ 16                          B. Availability of Relief Under Section 11-303

¶ 17          Here, the trial court concluded petitioners' claims failed as a matter of law. As stated, it initially determined it lacked the power to restrain a referendum on the grounds alleged by petitioners—that the referendum concerned a proposed constitutional amendment, which was, itself, unconstitutional and, if approved, could not validly be enforced. We find an analysis of the relevant supreme court case authority supports the court's determination and its decision was based on a correct interpretation of the law.

¶ 18          In *Fletcher v. City of Paris*, 377 Ill. 89, 91, 35 N.E.2d 329, 330 (1941), a group of taxpayers challenged the validity of a proposed municipal ordinance that was set for a referendum vote. As relief, they sought to enjoin the city from holding the election or expending city funds in connection with it. *Id.* On review, the supreme court identified the question before it as whether the taxpayers had the right "to enjoin the use of public funds to defray the expenses of holding an election called to vote upon the approval of [an] ordinance ***, which is alleged to be invalid." *Id.* at 92. The court ultimately determined the taxpayers were not entitled to such relief. *Id.* 98-99.

¶ 19          In setting forth its decision, the *Fletcher* court first stated that it had long been settled in Illinois "[t]hat the courts have no jurisdiction to enjoin the holding of an election." *Id.* at 92. It noted as follows:

> " 'The reason is that an election is a political matter with which courts of equity have nothing to do, and that such an attempt to check the free expression of opinion, to forbid the peaceable assemblage of the people, to obstruct the freedom of elections, if successful, would result in the overthrow of all liberties regulated by law.' " *Id.* at 93 (quoting *Payne v. Emmerson*, 290 Ill. 490, 495, 125 N.E. 329, 331 (1919)).

¶ 20    The supreme court rejected arguments by the taxpayers that the case before it was "different" because they sought to enjoin the use of public funds—not solely the holding of an election—and that their action could be "sustained because a taxpayer has the right to prevent public officers from paying out funds raised by taxation for expenses, or purposes, not authorized by law." *Id.* at 94. The court found the "primary purpose" of the taxpayers' action "was to have the court declare [the municipal ordinance] invalid before it became effective or in force," but that they had "no right" to do so. *Id.* at 94-95. It stated that to enjoin the enforcement of an unconstitutional statute, an individual "must be able to show that the statute is invalid and that he has sustained, or is in immediate danger of sustaining, some direct injury as the result of its enforcement and not merely that he suffers in some indefinite way in common with people generally." *Id.* at 95.

¶ 21    The *Fletcher* court described the taxpayers' challenge to the validity of the ordinance as premature and circuitous. *Id.* at 99. It noted that the election at issue constituted "one of the steps necessary in the passage of the ordinance" and, pursuant to statute, the ordinance "could not become effective until" it was submitted to, and approved by, voters. *Id.* at 95. It further stated as follows:

> "The courts have no more right to interfere with or prevent the holding of an election which is one step in the legislative process for the enactment or bringing into existence a city ordinance, than they would have to enjoin the city council from adopting the ordinance in the first instance.
>
> By the constitution, the powers of government are divided between three distinct branches of the government created by that instrument. The judiciary has no supervision over the legislative branch of the government. The courts can neither

dictate nor enjoin the passage of legislation." *Id.* at 96.

¶ 22    The *Fletcher* court favorably cited case authority describing court interference with legitimately held elections—those that have a lawful purpose, violate no law, and relate to the exercise of a constitutional right—as " 'dangerous to the rights of the citizen.' " *Id.* at 96-97 (quoting *Walton v. Develing*, 61 Ill. 201, 205 (1871)). It stated the weight of authority was "in favor of the position that the restraining power of the courts should be directed against the enforcement rather than the passage of unauthorized orders and resolutions, or ordinances, by municipal corporations." *Id.* at 97. Further, it concluded as follows:

> "The holding of an election is the exercise of a political right. Equity will not interfere in a case affecting only the enjoyment of political rights. The reasons for the application of this rule are even more persuasive in a case like this where the election sought to be enjoined is a necessary step in the legislative process of adopting and bringing into existence a municipal ordinance." *Id.* at 98.

¶ 23    In *Slack v. City of Salem*, 31 Ill. 2d 174, 201 N.E.2d 119 (1964), the supreme court favorably cited and relied on *Fletcher*. There, a city treasurer brought an action against the city and its governing officers "to restrain the holding of a referendum election to approve or disapprove the issuance of revenue bonds authorized by [statute]." *Id.* at 175. The city treasurer alleged that both the authorizing statute and ordinance calling for the election were, in substance, unconstitutional and "the expenditure of public funds to defray the cost of holding the referendum would therefore be illegal." *Id.* at 175. The court determined the situation before it was analogous to *Fletcher* and cited that case at length. *Id.* at 176-77. Further, it held the result would not be altered because the city treasurer sought both declaratory and injunctive relief. *Id.* at 177. The court stated as follows:

"This court has no power to render advisory opinions, and until the legislative process has been concluded, there is no controversy that is ripe for a declaratory judgment. Indeed, the constitutional issues upon which the opinion of this court is sought may never progress beyond the realm of the hypothetical." *Id.* at 178.

¶ 24 Next, in *Coalition for Political Honesty v. State Board of Elections*, 65 Ill. 2d 453, 460, 359 N.E.2d 138, 141, (1976), the supreme court distinguished the scenario presented from both *Fletcher* and *Slack*. There, an initiative petition proposing constitutional amendments was brought pursuant to article XIV, section 3, of the Illinois Constitution (Ill. Const. 1970, art. XIV, § 3) and taxpayers sought to enjoin the use of public funds (1) to determine the validity and sufficiency of the petition and (2) to arrange for and to conduct an election on the proposed amendments. *Coalition for Political Honesty*, 65 Ill. 2d at 456. The taxpayers alleged that none of the proposed amendments conformed to constitutional requirements, which restricted the subject matter of amendments proposed under section 3 of article XIV to "structural and procedural subjects" pertaining to the legislative branch. *Id.* at 458-59; Ill. Const. 1970, art. XIV, § 3.

¶ 25 In finding the holdings in *Fletcher* and *Slack* were not controlling, the supreme court pointed out that, unlike in those cases, the situation presented was "not concerned with an election or a legislative referendum, but rather, with the question [of] whether proposed amendments to our constitution satisfy the Constitution's own requirements for its amendment." *Coalition for Political Honesty*, 65 Ill. 2d at 460. It noted that the constitution contained specific requirements for proposed amendments under section 3 of article XIV (Ill. Const. 1970, art. XIV, § 3), setting forth "an express limitation as to the subject matter of a proposal." *Coalition for Political Honesty*, 65 Ill. 2d at 460. The court concluded as follows:

"A taxpayer's suit *** to enjoin the disbursement of public moneys

[citation] is an appropriate proceeding to determine whether proposed amendments by initiative meet requirements of article XIV, section 3. *** [T]his court [has] stated: It has been held that injunctive relief will be granted to prevent a waste of public funds by the holding of an election under an unconstitutional election statute. [Citations.] It follows that any election called in violation of the constitution likewise may be restrained and an action for injunctive relief is a proper remedy. [Citation.]" (Internal quotation marks omitted.) *Id.* at 461.

The court stated that even if substantive constitutional questions were not "ripe" for determination, the question of whether the proposed amendments met the requirements under the constitution was directly before the court. *Id.* In other words, "No future events or consideration would or could sharpen or better define th[e] issue for [the court's] decision." *Id.* Ultimately, the court held that the proposed amendment did not meet constitutional requirements and could "not be submitted to the electorate for approval." *Id.* at 472.

¶ 26    In two more recent cases—*Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 641 N.E.2d 525 (1994), and *Hooker*, 2016 IL 121077—the supreme court decided similar issues to those raised in *Coalition for Political Honesty*, pertaining to whether an initiative petition, proposing constitutional amendments, complied with the requirements of article XIV, section 3 of the Illinois Constitution (Ill. Const. 1970, art. XIV, § 3). Notably, in *Chicago Bar Ass'n*, 161 Ill. 2d at 506, the supreme court stated it agreed with findings by the dissent in that case "that issues of standing and ripeness [did] not preclude a review of the merits." In addressing those issues, the dissent favorably cited the rule in *Fletcher* but noted the "exception" recognized in *Coalition for Political Honesty*:

"While it is true, as a general rule, that a court may not enjoin an election [citation],

- 11 -

we have recognized an exception to this rule where, as here, injunctive relief is sought to prevent the waste of public funds on a ballot proposition that is alleged to be in violation of the constitution." *Id.* at 516 (Harrison, J., dissenting).

See also *Jordan v. Officer*, 155 Ill. App. 3d 874, 877, 508 N.E.2d 1077, 1079 (1987) (stating that "[t]he general rule [set forth in *Fletcher*] is subject to exception, where injunctive relief is necessary to prevent a waste of public funds by the holding of an election under an unconstitutional election statute or any election called in violation of the constitution").

¶ 27       We find the above case authority makes clear that courts may not act to enjoin a constitutionally authorized election. Like in *Fletcher*, petitioners' challenge in this case is to the validity of Amendment 1. They seek a finding that the amendment is unconstitutional and unenforceable before it becomes effective. However, before the amendment process has been completed, their challenge is premature and not ripe for consideration. Amendment 1 may never be finally approved. As stated in *Slack*, 31 Ill. 2d at 178, the constitutional issues petitioners want resolved "may never progress beyond the realm of the hypothetical."

¶ 28       Additionally, this case is unlike the supreme court's decision in *Coalition for Political Honesty*. Here, the requirements for amendments proposed by the General Assembly are described in article XIV, section 2 of the constitution. Ill. Const. 1970, art. XIV, § 2. Those requirements include that proposed amendments are to be (1) read in full on three different days in each house, (2) approved by a vote of three-fifths of the members elected to each house, and (3) "submitted to the electors at the general election next occurring at least six months after such legislative approval." *Id.* In this case, petitioners have not claimed that the constitution's own requirements for its amendment were not properly followed or satisfied. They do not claim that the election is unauthorized and being called in violation of the requirements set forth in article

- 12 -

XIV, section 2 (Ill. Const. 1970, art. XIV, § 2). Accordingly, the present case does not fall with exception recognized by *Coalition for Political Honesty*.

¶ 29 Here, petitioners rely on both *Chicago Bar Ass'n* and *Hooker* for the proposition that "taxpayers may file an action under [section 11-303 of the Code] to prevent state officials from using public funds to present voters with a proposed constitutional amendment that is itself unconstitutional." They describe *Fletcher* and *Slack* as "outdated" and "inapplicable." Petitioners argue the case authority upon which *Fletcher* was based is "no longer correct" given the supreme court's decisions in *Chicago Bar Ass'n* and *Hooker*. We disagree.

¶ 30 Neither *Chicago Bar Ass'n* nor *Hooker* held that a taxpayer action under section 11-303 could be maintained to prevent the use of "public funds to present voters with a proposed constitutional amendment that is *itself unconstitutional*." (Emphasis added.) Rather, those cases applied the same "exception" to the rule in *Fletcher* that was recognized in *Coalition for Political Honesty*. The issues resolved in *Coalition for Political Honesty*, *Chicago Bar Ass'n*, and *Hooker* were essentially the same, *i.e.*, whether the proposed amendments and the elections to approve them would be unconstitutional because the constitution's own requirements for its amendment were not properly followed. Petitioners fail to recognize this important distinction. Moreover, the supreme court's more recent decisions in *Chicago Bar Ass'n* and *Hooker* did not overrule *Fletcher*. In fact, *Chicago Bar Ass'n* favorably cited *Fletcher* for the general rule that a court may not enjoin an election before noting the exception recognized in *Coalition for Political Honesty*. For the reasons expressed above, the circumstances of this case are like *Fletcher* and unlike those presented in *Coalition for Political Honesty*, *Chicago Bar Ass'n*, and *Hooker*, where elections were allegedly being called in violation of the constitution and, specifically, the constitution's own amendment provisions.

¶ 31    Petitioners also argue that *Fletcher* is "outdated" because it described the cost associated with an election as "too trifling" an injury to be grounds for an injunction. *Fletcher*, 377 Ill. at 98. They argue that subsequent supreme court case authority has held that "every taxpayer is injured by the misapplication of public funds, whether the amount be great or small." *Krebs v. Thompson*, 387 Ill. 471, 475-76, 56 N.E.2d 761, 764 (1944). Ultimately, however, even assuming the correctness of petitioners' argument, we note that the clear import of the supreme court's decision in *Fletcher* was not the insignificance of the financial injury to the taxpayers. Instead, the court spoke at length about the danger of judicial interference with a valid election or legislative process. *Fletcher*, 377 Ill. at 97-99. The court also relied on the impermissibility of a premature challenge to the validity of a law that had not yet passed through that process and been given effect. *Id.* at 98-99.

¶ 32    Here, because petitioners do not claim a violation of article XIV, their proposed action would seek judicial interference with a legislative process that is constitutionally authorized. Such interference is improper as expressed in *Fletcher*, and ultimately, there is no waste of public funds caused by the carrying out of an election that conforms to constitutional requirements. Further, petitioners' challenge to the validity of Amendment 1 is premature until such time as it becomes effective. We note petitioners argue on appeal that even if their claim for injunctive relief may not be maintained, they could still successfully pursue declaratory relief. However, as respondents point out, *Slack* specifically applied its holding to a request for a declaratory judgment. Thus, like petitioners' claim for injunctive relief, their request for declaratory relief is also premature.

¶ 33    For the reasons stated, we find the trial court was correct in finding petitioners' claims failed as a matter of law. The court's determination that reasonable grounds did not exist

for the filing of petitioners' taxpayer action was not an abuse of discretion.

¶ 34                                      C. Preemption

¶ 35        As stated, the trial court further found that no reasonable grounds existed for the proposed taxpayer action because (1) Amendment 1 could have some valid applications that would not be subject to preemption and (2) preemption could only render Amendment 1 "dormant, not invalid." Given our holding above, we find it unnecessary to address this additional basis for denying petitioners leave to file their action.

¶ 36                                      III. CONCLUSION

¶ 37        For the reasons stated, we affirm the trial court's judgment.

¶ 38        Affirmed.

2022 IL App (4th) 220470

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 22-CH-34; the Hon. Raylene Grischow, Judge, presiding. |
| **Attorneys for Appellant:** | Jacob Huebert and Jeffrey Schwab, of Liberty Justice Center, of Chicago, and Mailee Smith, of Illinois Policy Institute, of Springfield, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Alex Hemmer, Deputy Solicitor General, of counsel), for appellees Jesse White and Susana Mendoza. <br><br> No brief filed for other appellees. |