2024 IL App (1st) 240417

Nos. 1-24-0417 & 1-24-0431 (consol.)

Opinion filed March 6, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BUILDING OWNERS AND MANAGERS ASSOCIATION, *et al.*, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) | No. 24 COEL 1 |
| COMMISSION OF THE BOARD OF ELECTIONS of the CITY OF CHICAGO, *et al.*, | ) ) ) ) | Honorable Kathleen M. Burke, Judge, presiding. |
| Defendants-Appellants, | ) ) | |
| and | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Intervenor/Nonparty-Appellant. | ) ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Lyle and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    The City of Chicago and Defendants Board of Election Commissioners for the City of Chicago appeal a final order of the circuit court in favor of the Plaintiffs, a collection of local business and real estate organizations. At issue is whether the circuit court erred by enjoining the Board of Elections from counting and reporting votes related to a referendum on the March 19, 2024, general primary ballot in Chicago commonly known as "Bring Chicago Home." The referendum relates to a legislative effort to create a graduated transfer tax on real estate in Chicago where state statute requires voter approval whenever the City intends to raise the rate of taxation

or impose a new tax. Because we conclude that the circuit court erred, we vacate the judgment of the circuit court and remand with instructions to dismiss the complaint for want of jurisdiction.

¶ 2                                    I. BACKGROUND

¶ 3     On November 7, 2023, the Chicago City Council passed a resolution directing the Board of Election Commissioners to place the following referendum question on the March 19, 2024, primary ballot:

"Shall the City of Chicago impose:

(1) a real estate transfer tax decrease of 20% to establish a new transfer tax rate of $3 for every $500 of the transfer price, or fraction thereof, for that part of the transfer price under $1,000,000 to be paid by the buyer of the real estate transferred unless the buyer is exempt from the tax solely by operation of state law, in which case the tax is to be paid by the seller; AND

(2) a real estate transfer tax increase of 166.67% to establish a new transfer tax rate of $10 for every $500 of the transfer price or fraction thereof, for that part of the transfer price between $1,000,000 and $1,500,000 (inclusive) to be paid by the buyer of the real estate transferred unless the buyer is exempt from the tax solely by operation of state law, in which case the tax is to be paid by the seller; AND

(3) a real estate transfer tax increase of 300% to establish a new transfer tax rate of $15 for every $500 of the transfer price, or fraction thereof, for that part of the transfer price exceeding $1,500,000 to be paid by the buyer of the real estate transferred unless the buyer is exempt from the tax solely by operation of state law, in which case the tax is to be paid by the seller?

The current rate of the real estate transfer tax is $3.75 per $500 of the entire transfer price, or fraction thereof, and the revenue is used for general corporate purposes. The revenue from the increase (the difference between revenue generated under the increased rate and the current rate) is to be used for the purpose of addressing homelessness, including providing permanent affordable housing and the services necessary to obtain and maintain permanent housing in the City of Chicago." Chi. City Clerk J. Proc. 5841 (November 7, 2023).

¶ 4     The referendum presents voters with the option to select a checkbox for "Yes" or "No."

¶ 5     The Illinois Municipal Code requires that home rule municipalities (like the City) obtain voter approval through a referendum before they can impose or increase a real estate transfer tax.

65 ILCS 5/8-3-19(d) (West 2022). If a majority of electors voting on the referendum approve it, the municipality may impose or increase the transfer tax. *Id.* § 5/8-3-19(e).

¶ 6 On January 5, 2024, Plaintiffs filed a complaint for declaratory judgment and injunctive relief in the circuit court of Cook County against Defendants Board of Election Commissioners. The complaint alleged that the referendum violated both the Illinois Municipal Code and Illinois Constitution and sought to enjoin the Board from certifying or including the referendum on the March 19 primary election ballot.

¶ 7 On January 16, Plaintiffs moved for judgment on the pleadings. On February 9, Defendants filed a response or alternatively a motion to strike Plaintiffs' motion for judgment on the pleadings. Defendants also filed their own motion to dismiss. On the same day, the City filed a petition to intervene in the case, as well as its own motion to dismiss and response to the motion for judgment on the pleadings. After briefing and argument, the circuit court denied Defendants' motion to dismiss and granted Plaintiffs' motion for judgment on the pleadings in an oral ruling on February 23. The circuit court also denied the City's motion to intervene. The circuit court enjoined the Board from counting any votes cast on the referendum. The City moved to stay the enforcement of the judgment, which the circuit court denied.

¶ 8 The City filed a timely notice of appeal (No. 1-24-0417). Ill S. Ct. R. 303 (eff. July 1, 2017). Defendants Board of Elections also filed a timely notice of appeal (No. 1-24-0431). *Id.* We consolidated the appeals.

Nos. 1-24-0417 & 1-24-0431 (consol.)

¶ 9                                    II. ANALYSIS

¶ 10    The City and Defendants Board of Elections raise a raft of issues with the circuit court's

order. For reasons that we explain more fully below, we are treating the City as a party to this

appeal and have considered its arguments along with the arguments raised by every other party.

Like the parties, we are left guessing as to the bases for the circuit court's ruling because the lower

court gave no reasons for its ruling. Rather, the circuit court read the parties' briefing *verbatim* in

open court and then made its oral ruling: "I am going to grant their motion for judgment on the

pleadings and grant the relief requested in the Complaint." Three days later, the circuit court issued

a written order that stated, "For the reasons stated in open court and on the record, Plaintiffs'

Motion for Judgment on the Pleadings is Granted."

¶ 11    The issues related to the referendum are purely legal and were decided on a motion for

judgment on the pleadings. 735 ILCS 5/2-615 (West 2022). We are in as good a position as the

circuit court to consider these questions, and our review is *de novo* without any deference to the

judgment below. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21.[1]

¶ 12                                          A.

¶ 13    Plaintiffs' chief argument is that the referendum as framed violates the Municipal Code

because it proposes to increase the real estate transfer tax on high dollar transactions and to

---

[1] We granted leave for four *amicus curiae* briefs: the End Homelessness brief, filed by a coalition of 18 Chicago-based individuals and entities in support of Defendants; the Chicago Community and Public Interest Organizations and Community Leaders brief, filed by a collection of 141 Chicago-based community and public interest organizations and community leaders, in support of Defendants; the Illinois Policy brief, filed by Illinois Policy, a non-profit public policy organization, in support of Plaintiffs; and the Illinois Chamber of Commerce brief, filed by the Illinois Chamber of Commerce on behalf of itself and 11 business associations in the Chicago area in support of Plaintiffs.

decrease the transfer tax on lower dollar transactions. Again, the Municipal Code requires that a home rule municipality like the City first obtain approval by referendum before raising the transfer tax:

> "(d) Except as provided in subsection (i), no home rule municipality shall impose a new real estate transfer tax after the effective date of this amendatory Act of 1996 without prior approval by referendum. Except as provided in subsection (i), no home rule municipality shall impose an increase of the rate of a current real estate transfer tax without prior approval by referendum. A home rule municipality may impose a new real estate transfer tax or may increase an existing real estate transfer tax with prior referendum approval. The referendum shall be conducted as provided in subsection (e). An existing ordinance or resolution imposing a real estate transfer tax may be amended without approval by referendum if the amendment does not increase the rate of the tax or add transactions on which the tax is imposed." 65 ILCS 5/8-3-19(d).

Plaintiffs contend that this provision authorizes only the imposition of a new transfer tax or increase in the rate of taxation with approval by referendum, and that any other change (such as a tax decrease) must be accomplished without prior approval by referendum.

¶ 14    Illinois courts, however, have declined to exercise jurisdiction over challenges to referenda that are part of the legislative process. It is well settled that courts cannot "enjoin the holding of an election" on such a referendum. *Fletcher v. City of Paris*, 377 Ill. 89, 92 (1941). In *Fletcher*, a group of taxpayers challenged the validity of a proposed municipal ordinance that was set for referendum vote. *Id.* Under the relevant state law, a referendum was among the "fundamental requirements for the enactment of such an ordinance." *Id.* at 95. Our supreme court described the

challenge as "premature" and affirmed the lower court decision declining to exercise jurisdiction over the challenge:

> "That the courts cannot interfere with the exercise of these legislative functions is too well settled to now be questioned. The courts have no more right to interfere with or prevent the holding of an election which is one step in the legislative process for the enactment or bringing into existence a city ordinance, than they would have to enjoin the city council from adopting the ordinance in the first instance." *Id.* at 96.

¶ 15    This rule stems from two bedrock principles. *First*, Illinois's constitutional system of government is one of separation of powers. In it "[t]he judiciary has no supervision over the legislative branch of government." *Id.* Therefore, "[t]he courts can neither dictate nor enjoin the passage of legislation." *Id.* The holding of an election for the purpose of passing a referendum to empower a municipality to adopt an ordinance is a step in the legislative process of the enactment of that ordinance. Courts do not, and cannot, interfere with the legislative process.

¶ 16    *Second*, we do not issue advisory opinions. Courts are empowered to rule on the validity of legislative enactments only after they have been enacted. "[U]ntil the legislative process has been concluded, there is no controversy that is ripe for a declaratory judgment." *Slack v. City of Salem*, 31 Ill. 2d 174, 178 (1964) (Schaefer, J.). In *Slack*, our supreme court reiterated the rule from *Fletcher* against enjoining referendum elections and offered this additional rationale beyond separation of powers: whether a bill or referendum actually passes and becomes law is purely speculative and the "issues upon which opinion of this court is sought may never progress beyond the realm of the hypothetical." *Id.*

¶ 17    Nor can it be said that the holdings of *Fletcher* and *Slack* are outdated or somehow no longer controlling. Illinois courts have repeatedly reaffirmed *Fletcher* in the years since it was decided. See, *e.g.*, *Coalition for Political Honesty v. State Board of Elections* (*Coalition I*), 65 Ill. 2d 453, 460 (1976) (distinguishing the initiative petition before the court from the referendum that was a step in the legislative process in *Fletcher*); *Chicago Bar Ass'n v. Illinois State Board of Elections* (*CBA II*), 161 Ill. 2d 502 (1994) (Harrison, J. dissenting) (acknowledging the continued validity of *Fletcher*).  As recently as 2022, the Illinois Appellate Court favorably cited *Fletcher*. *Sachen v. Illinois State Board of Elections*, 2022 IL App (4th) 220470, ¶ 32 ("[The] proposed action would seek judicial interference with a legislative process that is constitutionally authorized. Such interference is improper as expressed in *Fletcher* \*\*\*."). Plaintiffs assert that this line of authority is limited to considering the "effects" of referenda. Not so. The core holdings of *Fletcher* and *Slack* express a basic principle of judicial restraint and a refusal to interfere with a step in the legislative process.

¶ 18    Plaintiffs further argue that the Illinois Supreme Court has recognized an exception to the rule against enjoining a referendum election where the challenge is based on noncompliance with the eligibility requirements for placing referendum questions on the ballot. However, no Illinois court has ever sanctioned a challenge to a referendum that was a step in the legislative process. The *Coalition I* line of cases, on which Plaintiffs heavily rely, involves a determination of whether "proposed amendments to our constitution satisfy the Constitution's own requirements for its amendment." *Coalition I*, 65 Ill. 2d at 460; see also *Coalition for Political Honesty v. State Board of Elections* (*Coalition II*), 83 Ill. 2d 236 (1980) (hearing a challenge to a petition to amend the Illinois Constitution on the grounds that the referendum seeking to amend the constitution did not

comport with constitutional procedures for amending the constitution); *Lousin v. State Board of Elections*, 108 Ill. App. 3d 496 (1982) (same); *Chicago Bar Ass'n v. State Board of Elections* (*CBA I*), 137 Ill. 2d 394 (1990) (same); *CBA II*, 161 Ill. 2d 502 (1994) (same); *Clark v. Illinois State Board of Elections*, 2014 IL App (1st) 141937 (same); *Hooker*, 2016 IL 121077 (same). The other cases that Plaintiffs cite involve appeals that seek to compel that an election take place, not to enjoin one from being held, (*Quinn v. Board of Election Commissioners*, 2019 IL App (1st) 190189; *Johnson v. Ames*, 2016 IL 121563; *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714; *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95 (1986)), or that were decided after the election was held (*Jones v. City of Calumet City*, 2017 IL App (1st) 170236; *Clarke v. Village of Arlington Heights*, 57 Ill. 2d 50 (1974); *Henyard v. Municipal Officers of Village*, 2022 IL App (1st) 220898).

¶ 19    Thus, Plaintiffs' complaint is premature. Fealty to our constitutional system of government and to well-settled concepts of justiciability requires us to decline to interfere with the legislative process. Accordingly, the circuit court erred when it exercised jurisdiction over the complaint.

¶ 20                                          B.

¶ 21    Plaintiffs contend that various arguments advanced by the Board were "waived." But as to the issues critical to this appeal, the arguments relate to jurisdiction and cannot be waived. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333 (2002). Further, all arguments that we have considered in this appeal were squarely presented to the circuit court. Finally, we have allowed the City to participate in this appeal as if it was a party in all respects for two reasons. *First*, the City has a direct and substantial interest in this case and risked being unfairly prejudiced by the circuit court's judgment if not allowed to appeal. *Citicorp Savings of*

*Illinois v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 299 (1995) ("[I]t is settled law that a non-party may bring an appeal when that person has a direct, immediate and substantial interest in the subject matter, which would be prejudiced by judgment or benefited by its reversal."). Plaintiffs' contentions to the contrary are without merit. The City has a clear and direct interest in defending the referendum, which is the product of a City Council resolution.

¶ 22    *Second*, the circuit court committed an abuse of discretion in denying the City's petition to intervene. Under the Code of Civil Procedure, "upon timely application anyone shall be permitted as of right to intervene in an action *** when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735 ILCS 5/2-408(a)(2) (West 2022). Therefore, when considering a party's motion to intervene as of right, a circuit court's discretion is limited only to determining "whether the petition to intervene is timely, whether the petitioner's interest is sufficient, and whether that interest is being adequately represented by someone else in the lawsuit." (Internal quotation marks omitted.) *Flood v. Richey*, 2016 IL App (4th) 150594, ¶ 15. If these threshold requirements are met, then the "plain meaning of the statute directs that the petition be granted." *City of Chicago v. John Hancock Mutual Life Insurance Co.*, 127 Ill. App. 3d 140, 144 (1984). We review the circuit court's order denying a petition to intervene for an abuse of discretion. *In re County Treasurer & Ex-Officio County Collector*, 2017 IL App (1st) 152951, ¶ 15.

¶ 23    Here the City filed its petition to intervene, proposed motion to dismiss, and response to Plaintiffs' motion for judgment on the pleadings 35 days *after* Plaintiffs filed their complaint and 14 days *before* the circuit court made its oral ruling. See *Citicorp Savings*, 269 Ill. App. at 299 (abuse of discretion to deny intervention as untimely where intervenor filed its motion before final

judgment and 31 days after obtaining notice of the litigation).[2] The referendum is the result of a resolution passed by the Chicago City Council, and it is a step in the legislative process mandated by the Municipal Code. 65 ILCS 5/8-3-19; *In re County Treasurer*, 2017 IL App (1st) 152951, ¶ 17 (abuse of discretion to deny intervention where intervenors had a direct interest). Further, the only defendant in the case, the Board of Elections, asserted that it had no role in addressing whether the referendum complied with the Municipal Code or the Illinois Constitution, and thus it could not represent the City's interest. See *Kozenczak v. Du Page County Officers Electoral Board*, 299 Ill. App. 3d 205, 207 (1998); 10 ILCS 5/6-1 *et seq.* (West 2022); *Flood*, 2016 IL App (4th) 150594, ¶¶ 18-21 (abuse of discretion to deny intervention where intervenor's interests were inadequately represented). Against this backdrop, the City's petition amply demonstrated its right to intervene, and the circuit court committed an abuse of discretion in concluding otherwise.

---

[2] In the few cases where a petition to intervene filed prior to judgment was deemed untimely, the period of delay was much greater than 35 days. See, *e.g. Lewis v. Lead Industries Ass'n, Inc.*, 2022 IL App (1st) 211443-U, ¶¶ 8-10 (holding that a petition to intervene filed after a delay of more than 20 years was untimely). Several cases have even allowed intervention post-judgment. See, *e.g.*, *Brandt v. John S. Tilley Ladders Co.*, 145 Ill. App. 3d 304, 308-09 (1986).

¶ 24                              III. CONCLUSION

¶ 25    We offer this gentle reminder that seems warranted in light of some of the contentions raised by *amici*: we have decided this case exercising our best judgment in strict accordance with the law. Nothing in this decision is intended to suggest that we have any opinion one way or the other on the merits of the referendum at issue. That is a question wisely entrusted not to judges but to the people of the city of Chicago.

¶ 26    For all these reasons, the judgment of the circuit court of Cook County is vacated and the case is remanded with instructions to dismiss the complaint for want of jurisdiction.

¶ 27    Judgment vacated; remanded with instructions.

*Building Owners and Managers Association v. Commission of the Board of Elections of the City of Chicago*, 2024 IL App (1st) 240417

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-COEL-1; the Hon. Kathleen M. Burke, Judge, presiding. |
| **Attorneys for Appellees:** | Michael Kasper, of Chicago, Michael Del Galdo and Cynthia Grandfield, of Del Galdo Law Group, LLC, of Chicago for plaintiffs-appellees. |
| **Attorneys for Defendant-Appellant:** | Rosa Tumialán and Taylor Brewer, of Tressler LLP, of Chicago, for defendants-appellants. |
| **Attorneys for Intervenor/Nonparty-Appellant:** | Mary B. Richardson-Lowry, Myriam Zreczny Kasper, Suzanne M. Loose, and Stephen Collins, of Corporation Counsel of the City of Chicago, of Chicago, for intervenor/nonparty-appellant. |
| *Amici curiae*: | Ed Mullen, of Mullen Law Firm, of Chicago, Michael Kreloff, of Northbrook, and Amanda S. Yarusso, of Chicago, for *amici curiae* End Homelessness, Supporting Bring Chicago Home, *et al.* in support of Appellants; |
| | John Bouman and Daniel Schneider, of Legal Action Chicago, of Chicago, for *amici curiae* Chicago Community and Public Interest Organizations and Community Leaders in Support of Appellants; |
| | Jacob Huebert, Jeffrey M. Schwab, James J. McQuaid, of Liberty Justice Center, of Chicago, Mailee R. Smith, of Illinois Policy, of Chicago, for *amicus curiae* Illinois Policy in support of Appellees; |
| | Andrew Y. Acker, of Storino Ramello and Durkin, of Rosemont, for *amici curiae* Illinois Chamber of Commerce, *et al.*, in support of Appellees. |